**In re Ina Belle BROWN, Debtor.**

**Bankruptcy No. 95–30106(2)7.**

United States Bankruptcy Court, W.D. Kentucky.

June 26, 1995.

---

Anne Marie Reagan, Legal Aid Society, Louisville, KY, for debtor.

## *MEMORANDUM–OPINION*

J. WENDELL ROBERTS, Chief Judge.

The matter presently before this Court concerns Debtor, Ina Belle Brown's ("Brown"), 1994 federal earned income credit of $1,887.00. Brown has claimed an exemption under K.R.S. 205.220 of the tax credit, to which the Trustee has objected. Having reviewed the briefs filed by both parties, as well as having considered the arguments presented by counsel at the hearing on this matter on March 16, 1995, this Court overrules Trustee's Objection.

## *FACTS*

On February 12, 1993, Brown and her husband jointly filed for protection under Chapter 13 of the Bankruptcy Code (Case No. 93–30447(1)13). The Browns separated in December 1993 and subsequently filed for divorce. On January 12, 1995, Brown filed a "Motion to Deconsolidate" her bankruptcy case from that of her husband's and moved the Court to convert her bankruptcy case to a Chapter 7 case. Those motions were granted and Brown subsequently filed her Chapter 7 petition with this Court on Janu-

ary 30, 1995. Shortly thereafter, the Browns' divorce became final in February 1995.

At approximately the same time, Brown filed her 1994 federal and state income tax returns. Brown's tax returns reveal that her income from employment for 1994 was only $7,162.00. Brown maintains a household with her three children. Thus, her 1994 income was $7,638.00 below the federal poverty guideline of $14,800.00 for a family of four. During 1994 and continuing into the early months of 1995, Brown had only part-time employment at United Parcel Service ("UPS"), earning $827.97 gross per month. The combination of Brown's low income and dependent children entitled her to a federal earned income credit of $1,887.00 for the year of 1994.

On February 13, 1995, Brown amended her Chapter 7 bankruptcy petition, claiming an exemption of her federal earned income credit under K.R.S. 205.220. Brown is presently waiting to receive her tax credit.

## *LEGAL DISCUSSION*

### I. *PUBLIC ASSISTANCE GRANTS ARE EXEMPT UNDER KENTUCKY LAW.*

Kentucky is an "opt-out" state; therefore, Brown is entitled to claim any exemptions allowable under state law and under non-bankruptcy federal law. 11 U.S.C. § 522(b)(2)(A). Accordingly, Brown has claimed her federal earned income credit as exempt under K.R.S. 205.220(3). That statute grants an exemption in all public assistance benefits. Specifically, it provides:

> *Public assistance* shall not be assignable and shall be exempt from levy and execution. Furthermore, no assignment, pledge or encumbrance of any right to benefits due or payable under this chapter shall be valid. *Public assistance benefits,* as long as they are not mingled with other funds of the recipient, shall be exempt from any remedy for the collection of all debts, liens and encumbrances. No waiver of any ex-

emption provided for in this subsection shall be valid.

K.R.S. 205.220(3) (emphasis added).

The term "public assistance" is defined by K.R.S. 205.010(3), which states:

"Public assistance" means *money grants,* assistance in kind or services to or for the benefit of needy aged, needy blind, needy permanently and totally disabled persons, *needy children, or persons with whom a needy child lives* or a family containing a combination of these categories ..." (emphasis added).

Both parties agree that if the earned income credit is public assistance within the meaning of these statutes, then the exemption should be allowed.

## II. *THE FEDERAL EARNED INCOME CREDIT IS A PUBLIC ASSISTANCE GRANT PROGRAM.*

The federal earned income credit is codified in the Internal Revenue Code at 26 U.S.C. § 32. In discussing the nature of the Credit, several Courts have explained that even "though it is given effect through the income tax laws, the earned income credit is in substance an item of social welfare legislation, intended to provide low-income families with 'the very means by which to live.'" *In re Searles,* 445 F.Supp. 749, 753 (D.Conn. 1978), *Limited by In re Davis,* 136 B.R. 203 (Bankr.S.D.Iowa 1991) ("Limited to the conclusion that an earned income credit is exempt property.") (*quoting Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018–19, 25 L.Ed.2d 287 (1970)); *In re Murphy,* 99 B.R. 370 (Bankr.S.D.Ohio 1989); *In re Jones,* 107 B.R. 751, 752 (Bankr.D.Idaho 1989), *Limited by In re Davis,* 136 B.R. 203 (Bankr. S.D.Iowa 1991) ("Limited to the conclusion that an earned income credit is exempt property.")

 This Court has looked at the legislative history of the earned income credit and finds that Congress intended the credit to provide economic relief to low income workers with dependent children. S.Rep. No. 94–36, 94th Cong., 1st. Sess. 11 (1975), *reprinted in* [1975] U.S.Code Cong. & Admin. News 54, 64; *See also Sorenson v. Secretary of the Treasury,* 475 U.S. 851, 864, 106 S.Ct. 1600,

1608–09, 89 L.Ed.2d 855 (1986). One of the primary goals of the credit is to provide a bonus or incentive for low-income people to work and support themselves. S.Rep. No. 94–36, *reprinted in* [1975] U.S.Code Cong. & Admin.News at 64; *In re Davis,* 136 B.R. 203, 206 (Bankr.S.D.Iowa 1991). Another congressional goal is to reduce the disincentive to work caused by Social Security taxes on earned income. *Sorenson,* 475 U.S. at 864, 106 S.Ct. at 1608–09; *In re Goldsberry,* 142 B.R. 158, 159 (Bankr.E.D.Ky.1992). Finally, Congress also intended for the credit to stimulate the economy by funneling funds to persons likely to spend the money immediately. *Sorenson,* 475 U.S. at 864, 106 S.Ct. at 1608–09; *Davis,* 136 B.R. at 206.

The earned income credit is clearly distinguishable from a tax refund. While a tax refund returns to the taxpayer any overpayment of taxes withheld from wages, the earned income credit is a grant unrelated to the amount of taxes owed. *Sorenson,* 475 U.S. at 864, 106 S.Ct. at 1608–09; *Searles,* 445 F.Supp. at 752; *Jones,* 107 B.R. at 752. "The earned income credit is given effect through a refund, but it is not a refund of taxes previously paid." *Searles,* 445 F.Supp. at 752; *Jones,* 107 B.R. at 752. As with other government grant programs, the amount is determined on a sliding scale based on income. *Searles,* 445 F.Supp. at 753. Nevertheless, "while the amount of the earned income is the *measure* for calculating the size of the earned income credit, the *source* is not wages ..." *Id.* (*quoting In re Spooner,* 9 Collier Bankr.Cas. 418, 421) (N.D.Iowa 1976)) (emphasis added).

 If the credit exceeds the taxes owed, the difference is paid directly to the low-income worker by the IRS. *In re Hurles,* 31 B.R. 179 (Bankr.S.D.Ohio 1983). In many cases in which little or no taxes are due, a worker may file a tax return for the sole purpose of collecting the earned income credit. *Searles,* 445 F.Supp. at 752; *Davis,* 136 B.R. at 205. Thus, while the earned income credit is obtained by filing a tax return, "the earned income credit is in substance an item of social welfare legislation intended to provide low income families with the means by which to live." *Jones,* 107 B.R. at 751;

*Hurles,* 31 B.R. at 180 (the earned income credit has been determined to be an entitlement program).

Under the earned income credit program, a certain percentage of a qualifying individual's wages are credited up to a specified amount. Under the 1994 earned income credit tables, an individual with one qualifying child is eligible for the credit if his or her income for that year did not exceed $23,-750.00. 1994 1040A forms and Instructions, Dep't of the Treasury, Internal Revenue Service, pp. 45–50. In this case, Brown claimed one of her three children on her 1994 tax return, and her earned income for 1994 totalled $7,162.00. In accordance with the 1994 Earned Income Credit Table, Brown was entitled to a credit of $1,887.00. Because Brown's income for 1994 was so low, her taxable income after exemptions and deductions was zero. Therefore, the full amount of federal taxes withheld from her earnings was refunded in full. This Court finds it significant that in addition to that refund, Brown will receive a separate check for $1,887.00 for the earned income credit. This fact makes it clear that the earned income credit is not merely a tax credit, but a grant given to Brown by the federal government.

Accordingly, the earned income credit is a public assistance grant similar to other state and federal income-based grant programs, such as Aid to Families with Dependent Children ("AFDC") and food stamps. *In re Goldsberry,* 142 B.R. 158, 159 (Bankr. E.D.Ky.1992). Consequently, the Court must next determine whether this particular monetary grant falls within the scope of the definition of "public assistance" as defined by K.R.S. 205.010(3), so as to be classified as exempt under K.R.S. 205.220(3).

### III. THE EARNED INCOME CREDIT MEETS THE DEFINITION OF PUBLIC ASSISTANCE UNDER K.R.S. 205.010(3).

This Court has examined the term "public assistance" as it is defined by Kentucky Statute, and finds that Brown's earned income credit clearly comes within the scope of that definition. The term "public assistance" is defined by K.R.S. 205.010(3), which is reproduced in Section I of this Opinion.

The definition includes money grants, assistance in kind or services to specified individuals or groups. Most relevant to this case is the definitions inclusion of money grants to needy children or to persons with whom a needy child lives. In this case, the Court must accordingly determine whether the earned income credit will be paid to a person "with whom a needy child lives."

A "needy child" is defined by K.R.S. 205.010(4) as:

> ... a child who has been deprived of parental support by reasons prescribed by regulations within the scope of Title IV of the Social Security Act, its amendments, and federal regulations and who does not have otherwise provided to him a subsistence compatible with decency and health.

Thus, this statute requires that a two part test be met in order for a child to be classified as a "needy child." First, the child must be deprived of parental support by reasons prescribed by the regulations promulgated under Title IV of the Social Security Act. Second, the child must not have otherwise provided to him a level of subsistence that is "compatible with decency and health."

In applying this two-prong test to an earned income credit received by a family with dependent children and which was receiving AFDC payments, the Bankruptcy Court sitting in the Eastern District of Kentucky found that the credit met both prongs of the test and was accordingly exempt under K.R.S. 205.220(3). *Goldsberry,* 142 B.R. at 158. This Court likewise finds that both prongs of the test have been met in this case, despite the fact that Brown's children are not recipients of AFDC payments.

### A. Brown's Child was deprived of parental support by reasons prescribed by the regulations promulgated under Title IV of the Social Security Act.

With regard to the first prong of the test, Title IV of the Social Security Act encompasses, among other things, the statutory provisions relating to the AFDC program (Part A). 42 U.S.C. §§ 601–709. Part A of Title IV defines "dependent child" as a needy child who has been "deprived" of parental support or care by reason of the death, con-

tinued absence from the home ... or the physical or mental incapacity of a parent ...." 42 U.S.C. § 606(a). Pursuant to the regulations promulgated under that statute, the state is required to determine that the child is deprived of parental support or care for the reasons specified in 45 C.F.R. § 233.90(a)(1). The reasons set forth in this regulation likewise include death, continued absence from the home, physical or mental incapacity, and furthermore adds unemployment of a parent in a two-parent home.

Finally, Kentucky regulations, in establishing eligibility requirements for AFDC, further define "deprivation due to absence":

Section 7. Deprivation Due to Absence.
(1) To be considered deprived due to absence, a needy child shall be physical separated from the parent and:
(a) The nature of the absence of the parent interrupts or terminates the parent's functioning as a provider of maintenance, physical care, or guidance for the child; and
(b) The known or indefinite duration of absence precludes counting on the parent's performance of his function in planning for present support or care of the child.
(2) Absence may be voluntary or involuntary
(a) Voluntary absence includes:
1. Divorce ...

904 KAR 2:006 Section 7.

The Trustee argues that because Brown does not receive AFDC, her child cannot meet the definition of "needy child" under K.R.S. 205.010(4). This Court rejects that argument. In defining "needy child," K.R.S. 205.010(4) does *not* state that the child must be a *recipient* of AFDC. Rather, the statute states that the child must meet the definition of deprivation as set forth pursuant to Title IV of the Social Security Act.

In this case, Brown's children have clearly met the definition of deprivation. Trustee has conceded that Brown's husband paid at most only 70% of his child support obligation between January 1994 and February 1995. The child support records indicate that Mr. Brown was ordered to pay child support of $134.00 per week by Court Order dated January 10, 1994. That Order continued in effect until October 17, 1994, when it was superseded by a new Court Order requiring Mr. Brown to pay $120.38 per week. Pursuant to the first Child Support Order, Mr. Brown was obligated to pay $5,226.00 between January 10, 1994 and October 13, 1994. The records of the Jefferson County Attorney, the agency responsible for collecting the child support in this case, show that Mr. Brown paid only $3,296.00 of the amount owed, thus leaving an arrearage of $2,424.18.

Pursuant to the second Child Support Order, Mr. Brown should have paid $1,841.81 between October 17, 1994 and January 31, 1995. However, the Jefferson County Attorney records show that he paid only $830.00, leaving an arrearage of $1,010.81. Significantly, between December 15, 1994 and January 30, 1995, the period immediately preceding the filing of this Chapter 7 case, Mr. Brown made no child support payments. Thus, the total arrearage for the period of January 10, 1994 through January 30, 1995 amounts to $2,941.81. This Court, accordingly, finds that Brown has adequately demonstrated that her children have been deprived of parental support to a substantial degree.

As stated above, once the Court has determined that there has been a deprivation of parental support, K.R.S. 205.010(4) requires a determination that the deprivation occurred due to reasons specified under Title IV regulations. This Court finds that Brown's children suffer from parental deprivation "due to absence," as outlined in 45 C.F.R. § 233.90(c)(1)(iii) and 904 KAR 2:006 Section 7. Under absence deprivation, the child must be physically separated from the parent, and the nature of the absence (in this case, divorce) must interrupt or terminate the parent's functioning as a provider. This relates not only to financial support, but also to physical care and guidance. *See* 904 KAR 2:006 Section 7. Further, it must be shown that the length or duration of the absence makes it impossible to count on the parent to perform those roles on a regular basis. *Id.*

Mr. Brown's absence from his family meets the above criteria. He has been phys-

ically separated from his children since December, 1993, and it appears from the evidence that Mr. Brown is uninvolved with his children's day-to-day activities. His financial support has been sporadic, and this lack of support has coincided with, and is a result of, his separation and subsequent divorce from Ms. Brown.

Trustee has argued that the deprivation of financial support in this case was caused by *unemployment*, not absence. This Court finds Trustee's argument to be without merit. It appears from the evidence in the record that when Mr. Brown lost his job in June 1994, he received $4,000 in severance pay. Rather than pay his child support obligation, Mr. Brown used the funds to pay for his truck.

Mr. Brown also received $458.00 every two weeks in unemployment benefits while he was out of work. Nevertheless, he failed to remain current in his child support obligations. Furthermore, it appears from the record that Mr. Brown has not been forthcoming regarding the place of his current employment, presumably in an effort to avoid a Wage Assignment Order.

This Court agrees with Brown's assessment that "this is not the portrait of a man out of work, who is doing the best he can for his kids" (Brown's Reply at 8). Certainly, the Brown children have been deprived of parental support due to absence as defined in the regulations. Hence, they have been deprived of parental support for reasons specified under Title IV of the Social Security Act, and therefore, meet the definition of "needy children" under K.R.S. 205.010(4).

**B. *BROWN'S CHILDREN DO NOT HAVE OTHERWISE PROVIDED TO THEM A LEVEL OF SUBSISTENCE THAT IS COMPATIBLE WITH DECENCY AND HEALTH.***

For the year of 1994, the year for which Brown was entitled to receive her earned income credit at issue, and continuing through January of 1995, when Brown filed her Chapter 7 Petition, her children clearly did not have "otherwise provided to [them] a subsistence compatible with decency and health." K.R.S. 205.010(4). Brown was employed only on a part-time basis at UPS,

earning $827.97 gross per month. After taxes and union dues, Brown's net income was only $603.87. At that time, the Chapter 13 payments on her joint case with her ex-husband were being taken out of Brown's pay. After that deduction, Brown's take-home pay was a mere $385.56 per month. As stated above, her income from employment for 1994 was only $7,162.00, which was $7,638.00 below the 1994 federal poverty guideline of $14,800.00 for a family of four. 59 Fed.Reg. 6277. Moreover, at the time Brown filed her Chapter 7 petition, she was two months behind in her mortgage payments, owed LG & E $576.00, and was relying on the State to provide her with food stamps each month so that she could feed her children. Clearly, Brown was not able to maintain a subsistence standard of living for her children.

Trustee argues that Brown has failed to demonstrate that she is unable to provide a subsistence standard of living on her own. In making this argument, Trustee relies upon Brown's *current* financial situation. Subsequent to the filing of her Chapter 7 petition, Brown obtained a better job at the Coca–Cola Company, where she is presently employed, making approximately $1,376.00 a month. While Brown was able to maintain her employment at UPS, as well, for a period of time following her employment at Coca–Cola, Brown eventually had to give up her job at UPS in order to adequately care for her three children.

This Court finds Brown's current financial situation to be completely irrelevant to the issue of whether she had children in need for the year of 1994; that is, the year for which the earned income credit is attributable. The Court reminds Trustee that the issue is whether the payment meets the definition of "public assistance." This Court finds that Brown's earned income credit certainly meets that definition *for the year it was earned.*

### CONCLUSION

For the above-stated reasons, this Court holds that Debtor, Ina Belle Brown's, 1994 earned income credit constitutes "public as-

**230**

sistance" for the purposes of K.R.S. 205.220(3) and 205.010(3). Accordingly, this Court by separate Order overrules Trustee's Objection to Brown's claimed exemption.

### *ORDER*

Pursuant to the attached Memorandum–Opinion,

IT IS HEREBY ORDERED that Trustee's Objection to Debtor, Ina Belle Brown's, claimed exemption of her 1994 federal earned income credit be, and hereby is, OVERRULED.

This is not a final Order.