In re Martin Alan BELTZ, Julia Marguerite Beltz, Debtors.

No. 98–34749 (2) 13.

United States Bankruptcy Court, W.D. Kentucky.

April 26, 2001.

Gregory C. Menefee, Louisville, KY, for Debtors.

William W. Lawrence, Louisville, KY, trustee.

### MEMORANDUM–OPINION AND ORDER

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is presently before the Court on the Debtors' Motion to retain their 1999 Federal Child Tax Credit ("FCTC") they are otherwise required to turn over to the Trustee pursuant to both L.B.R. 13 (W.D.Ky.) and the terms of the Order of Confirmation. Debtors argue that the FCTC is an exempt public assistance benefit pursuant to KRS 205.220(3). The Court has considered the briefs filed by the Debtors and the Trustee and has conducted its own independent research. For the reasons hereinafter set forth, the Court **OVERRULES** the Debtors' Motion.

### FACTS

Debtors, a married couple, filed a joint Chapter 7 bankruptcy on September 11, 1998, which they subsequently converted to Chapter 13 on November 16, 1998. Debtors listed a combined annual income of $33,242.57 for 1996, $40,553.36 for 1997,

and year-to-date income for 1998 (as of September) of $22,405. Julia Beltz' nine year old daughter from a previous relationship was the only dependent claimed. Debtors' 23% plan was confirmed on December 16, 1998, the Debtors having agreed to pay $101 per week for 60 months and to pay certain secured creditors outside the plan. The Order of Confirmation provided that Debtors assign all federal and state tax refunds received during the plan to the Trustee.

Since filing bankruptcy, Debtors have had two children. During both of these difficult pregnancies, Julia Beltz was unable to work for some period of time and she lost her job during the second pregnancy. The Court has twice granted Debtors a three month suspension of plan payments because of these circumstances. Debtors assert that aside from these periods, they have remained current with their plan payments.

In September 2000, the Trustee filed a show cause motion, as Debtors had failed to provide copies of their 1999 federal and state tax returns and had failed to turnover their tax refunds pursuant to L.B.R. 13 (W.D.Ky.). Debtors were ordered to comply within ten days. On October 31, 2000, Debtors moved the Court to keep their 1999 federal and state tax refunds, which totaled $1,741. This Court partially overruled the Motion, ordering Debtors to escrow $1,000 of the tax refund with their attorney (the amount of their FCTC for 1999) and to turn over the balance to the Trustee. Debtors have escrowed $1,000 and have turned over $350 to the trustee, $391 having already been spent for necessary living and medical expenses.

### LEGAL DISCUSSION

#### I. CHILD TAX CREDIT IS PROPERTY OF THE ESTATE

■ The bankruptcy estate is comprised of "... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In a Chapter 13 case, property of the estate includes all income earned and property acquired by the Debtor until the case is closed, dismissed or converted to another chapter. 11 U.S.C. § 1306. Debtors must agree to pay all future income and earnings to the extent necessary to ensure the plan's completion. 11 U.S.C. § 1322(a). Local Rule 13.4 requires any Debtor with a plan confirmed at less than 100% to turn over all federal and state income tax refunds to the trustee during the plan. L.B.R. 13 (W.D.Ky.)

■ All of Debtors' federal and state tax refunds received during the pendency of their Chapter 13 case are property of the estate, including the FCTC. The Sixth Circuit recently held that another tax credit, the federal Earned Income Tax Credit (EITC), is property of the estate in a Chapter 7 case. *Johnston v. Hazlett (In re Johnston)*, 209 F.3d 611 (6th Cir.2000). The Court noted the all-inclusive language of § 541 and stated that the overwhelming majority of Courts include the EITC as property of the estate. *See also Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193, 1195 (10th Cir.2000). This Court, in a recent unreported case, similarly held that the FCTC is property of the estate in a Chapter 7 case. *In re Roberts*, Case No. 98–51477(2)7 (July 28, 2000). Given the much broader definition of property in a Chapter 13 case, this Court concludes that the FCTC is property of the bankruptcy estate.

#### II. THE CHILD TAX CREDIT IS NOT EXEMPT IN THIS CASE

■ Kentucky is an "opt-out" state and Debtors are entitled to claim any exemptions allowable under state law and

under non-bankruptcy federal law. See K.R.S. 427.170; 11 U.S.C. § 522(b)(2)(A). Exemptions are to be liberally construed in favor of the Debtor. *In re Lynch,* 187 B.R. 536, 550 (Bankr.E.D.Ky.1995); *In re Blizard,* 81 B.R. 431, 432 (Bankr.W.D.Ky. 1988).

Debtors urge the Court to allow them to exempt the FCTC under K.R.S. 205.220(3). That statute states that "public assistance shall not be assignable and shall be exempt from levy or execution ... Public assistance benefits, as long as they are not mingled with other funds of the recipient, shall be exempt from any remedy for the collection of all debts, liens and encumbrances. . . . "

This Court analyzed and discussed K.R.S. 205.220(3) in great detail in determining that the EITC is a public assistance program that may be claimed exempt under that statute. See *In re Brown,* 186 B.R. 224 (Bkrtcy.W.D.Ky. 1995). As we did in that case, we must first review the statute that creates the FCTC and its legislative history to determine the nature and intent of the program.

The FCTC was enacted as part of the Taxpayer Relief Act of 1997 and is codified at 26 U.S.C. § 24. It allows a credit against taxes owed up to $500 for each qualifying child. 26 U.S.C. § 24. A qualifying child must be claimed as a dependent, must be under 17 years of age at the end of the tax year and must be a child, descendant of a child, a stepchild or foster child of the taxpayer. 26 U.S.C. § 24(c) and § 32(c)(3)(B). The credit is fully available to married taxpayers filing a joint return until their adjusted gross income reaches $110,000. Beyond that, the credit is reduced by $50 per child for each $1,000 of income in excess of the threshold. The threshold amount is $75,000 for an unmarried individual and $55,000 for a married person filing a separate return. 26 U.S.C. § 24(b).

The FCTC is codified under Subpart A (Nonrefundable Personal Credits) of Subtitle A (Income Taxes) of the Internal Revenue Code. Generally, this means that the FCTC is only available to reduce tax liability and is non-refundable if no taxes are owed. Subsection § 24(d), however, allows a family with three or more children to receive a refundable FCTC in some circumstances, even if no taxes are owed. This additional credit is the lesser of (1) the unused portion of the child tax credit allowed under 26 U.S.C. § 24(a) or (2) approximately the difference between the taxpayer's portion of payroll taxes and the allowed EITC.[1]

The only reported case addressing the FCTC reviewed the legislative history of this provision in detail. *In re Dever,* 250 B.R. 701 (Bankr.D.Idaho 2000). That Court found the intent of the credit was to provide relief to a broad spectrum of taxpayers with families, *including* low income families. Further, the Court found no evidence that the *primary* purpose of the FCTC was to assist or provide relief to low income families. *Id.* at 705. Both the Senate and House Reports on this bill addressed its purpose this way:

---

**1.** Pursuant to 26 U.S.C. § 24(d)(1), a taxpayer family with three or more children must first determine its tax liability, and may take a $500 credit for each child up to the tax liability. If the tax liability is $0, no child tax credit is allowed. If the taxes owed are less than the allowable credit, only a credit up to the amount of tax liability is allowed. A family with three or more children must then compute its EITC, if applicable, and subtract the EITC from their share of payroll taxes. An additional refundable credit is allowed, which will be the lesser of the unused child tax credit or the amount by which the payroll taxes exceed the EITC.

The Committee believes that the individual income tax structure does not reduce tax liability by enough to reflect a family's reduced ability to pay taxes as family size increases. In part, this is because over the last 50 years the value of the dependent personal exemption has declined in real terms by over one-third. The Committee believes that a tax credit for families with dependent children will reduce the individual income tax burden of those families, will better recognize the financial responsibilities of raising dependent children, and will promote family values. In addition, the Committee believes that the credit is an appropriate vehicle to encourage taxpayers to save for their children's education.

H.R.Rep. 105–148, at 309–10 (1997), U.S.Code Cong. & Admin.News 1997, pp. 678, 704; S.Rep. 105–33, at 442 (1997). Statements of Senators and Congress Members indicate that the credit was intended "to provide relief for hardworking middle-income families and to allow these families to invest their own money into their children's education, housing, nutrition, nurturing and care." *Dever*, 250 B.R. at 705 (citing statements in the Congressional Record).

Although the credit was obviously intended to *include* low income families in its scope, it in effect recognizes the additional financial needs of *all* families with children. Having found that the FCTC's primary purpose was not to provide public assistance to needy families, the *Dever* court concluded that the credit was not public assistance within the meaning of the Idaho Statute, and denied the debtor's claimed exemption. *Id.* at 706.

The FCTC is distinguishable from the EITC, which we found was specifically intended to provide tax relief to low income families. *In re Brown*, 186 B.R. at 226.[2] This Court agrees with the finding in *Dever* that the FCTC's primary purpose is not to provide tax relief to low income families. Rather, the intent of the credit, as evidenced by legislative history, is primarily to benefit middle class Americans. In fact, most low income families, who have little or no *income* tax liability after exemptions and deductions, are not able to take this credit.[3] The added burden of payroll taxes, which disproportionately impacts low-income families, is only considered in computing the additional FCTC available to families with three or more children. Since the EITC is subtracted from the payroll taxes to compute any additional credit, a low-income family that receives an EITC is unlikely to qualify for the additional credit under 26 U.S.C. § 24(d).

2. Nothing in this opinion should be construed to suggest that our decision in *Brown* is overruled or modified. This Court shall continue to permit debtors to fully exempt benefits received under the EITC program, a program that was clearly intended as a public assistance program. This Court will review the exemption of FCTC benefits on a case by case basis. Only a low income family that meets the Kentucky criteria for a public assistance grant will be permitted to exempt these funds.

3. A report prepared by the Senate Finance Committee regarding the original child tax credit proposed as part of the Contract for America is entitled, "Background and Information Relating to Three Tax Cut Proposals for Middle–Income Americans." Staff of the Joint Comm. on Taxation, 103rd Cong. (Joint Comm. Print JCX–7–95). The original Contract for America child tax credit proposal actually was more beneficial to low income families, as it allowed for the credit to be applied against both income taxes and the employer and employee portions of payroll taxes, less the EITC. Isaac Shapiro and Robert Greenstein, Center on Budget and Policy Priorities, Child Tax Credit Adopted by Senate Finance Committee Takes Credit Away From Four Million Children in Near–Poor and Lower–Middle–Income Working Families (1997).

Nevertheless, even though the *primary* purpose of the FCTC is not to benefit low-income families, the credit is still intended to benefit this group. In a small number of cases, a low-income family might qualify for the FCTC, in which case this credit could in effect be a public assistance grant. Therefore, this Court must still consider whether the FCTC received by the Debtors in this case meets the definition of public assistance under Kentucky law.

Kentucky defines public assistance as "... money grants, assistance in kind, or services to or for the benefit of needy aged, needy blind, needy permanently and totally disabled persons, needy children, or persons with whom a needy child lives or a family containing a combination of these categories...." K.R.S. 205.010(3). A "needy child" under K.R.S. 205.010(4) means "... a child who has been deprived of parental support by reasons prescribed by regulations within the scope of Title IV of the Social Security Act, its amendments, and federal regulations and who does not have otherwise provided for him a subsistence compatible with decency and health."

■■■ The relevant portion of these statutes in this case is assistance provided to a needy child or to persons with whom a needy child lives. As we stated in *Brown*, a two part test must be met in order for a child to be classified as needy. 186 B.R. at 227. First, the child must be deprived of parental support as defined under Title IV of the Social Security Act and regulations promulgated under that law.[4] Pursuant to both federal and state regulations, a child may be deprived of parental support by the death, continued absence, physical or mental incapacity or unemployment of the parent. 45 C.F.R. 233.90(a)(1) and 233.90(c)(1)(i); 921 K.A.R. 2:006 Sections 5–9. Secondly, the child must not otherwise have provided to him or her a level of subsistence that is compatible with decency and health. K.R.S. 205.010(4).

Debtors argue that their oldest child is needy because her father is absent and is not providing consistent financial support. 921 K.A.R. 2:006 Section 7. Further, they argue that both children were needy[5] as Julia Beltz was temporarily incapacitated and unemployed due to a difficult pregnancy for part of 1999.[6] 921 K.A.R. 2:006 Sections 8 and 9. While there is no proof in the record relative to these assertions, it is not necessary to the determination of this case to address this first prong further.

■■■ Debtors do not meet the second prong of the needy test. The record indicates reduced income for 1999, but the amount of this reduction is unclear. In 1997, Debtors' had a combined annual gross income of $40,553.36. In 1998,

---

4. Title IV of the Social Security Act was codified at 42 U.S.C. §§ 601–617. (Part A). That section addressed the federal requirements for state participation in the Aid to Families with Dependent Children Program. As part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, those sections were repealed. Part A was replaced by Block Grants to States for Temporary Assistance for Needy Families. The terms "needy child" and "deprivation of parental support" are no longer defined in the statute, but still appear in the federal and Kentucky regulations at 45 C.F.R. 233.90(a)(1), 233.90(c)(1)(i), and 921 K.A.R. 2:006. These definitions are still relevant here, as they are used by the States to determine eligibility for temporary assistance under Title IV of the Social Security Act.

5. The Beltz' second child (Julia Beltz' third child) was not born until 2000 and thus Debtors could not claim a FCTC for this child in 1999, the year in question here.

6. Debtor's Motion for Temporary Suspension of Plan Payments, filed on June 10, 1999, states that Julia Beltz had been unable to work since April 1, 1999. It is unclear from the record when she returned to work.

based on the year-to-date figure provided upon the bankruptcy filing in September, Debtors' annual income would have been approximately $33,607.50, a reduction of almost $7,000 from 1997. Even if we assume that Julia Beltz did not work at all after April of 1999, based on the monthly income figures provided in Schedules I and J, Debtors would have earned $34,650 gross and $25,110.84 net for 1999. In addition, Debtors' indicate they do receive some sporadic child support, which is due to be paid at the rate of $70 per week.

This Court recognizes that in today's economy, a gross income of $35,000 is inadequate to meet the full needs of a growing family of four. However, it is sufficient to provide Debtors' children with "a level of subsistence compatible with decency and health." Debtors correctly note that this standard is not defined by statute or regulation. This Court adopts the Federal Poverty Guidelines as the standard below which a family is presumed to be unable to provide a subsistence standard of living. The 1999 Federal Poverty Guideline for a family of four was $16,700. U.S. Dept. of Health and Human Services, The 1999 HHS Poverty Guidelines, 64 Fed. Reg. 13428–13430 (March 18, 1999).[7] Debtors' gross income for 1999 exceeded the poverty level by approximately $18,000.

The Court therefore concludes that Debtors' children are not needy within the meaning of K.R.S. 205.010(4), their FCTC is not public assistance within the meaning of K.R.S. 205.010(3), and Debtors are not entitled to exempt the credit pursuant to K.R.S. 205.220(3).

### CONCLUSION

From the many mathematical computations engaged in by the Court, it appears unlikely that the FCTC will ever be available for any size family at or below the Federal Poverty Guideline. This Court is not inclined to allow any Debtor above the poverty level to exempt the FCTC pursuant to K.R.S. 205.220(3). As the Debtors' income in this case is substantially above the poverty guidelines, they shall not be permitted to claim their FCTC exempt under K.R.S. 205.220(3). Accordingly, Debtors' Motion to retain this portion of their 1999 federal tax refund is **DENIED** and Debtors' are **ORDERED** to turn over the $1000 in escrow to the Trustee within ten days. Debtors are further **OR-DERED** to turn over the $391 to the trustee within sixty (60) days.

7. The 2000 HHS Federal Poverty Guidelines can be found at 65 Fed.Reg. 7555–7557 (February 15, 2000). These guidelines are updated annually.