**In re Thomas and Lynnette DEVER, Debtors.**

No. 99–02853.

United States Bankruptcy Court, D. Idaho.

July 21, 2000.

Randal J. French, Bauer & French, Boise, ID, for Debtors.

Lois K. Murphy, Boise, ID, Chapter 7 Trustee.

Gary L. McClendon, Boise, ID, Office of the U.S. Trustee.

## MEMORANDUM OF DECISION

TERRY MYERS, Bankruptcy Judge.

## BACKGROUND

Thomas and Lynette Dever ("Debtors") are married and have three minor children. They filed a chapter 7 petition for relief on October 29, 1999 and received a discharge on February 2, 2000.

The Debtors' budget, schedules I and J, projected a combined year 2000 gross income of $50,000. In 1999, according to their federal tax return they had a combined adjusted gross income of $66,359.

The Debtors did not indicate, on their original schedule B, that either tax refunds or distributable tax credits were anticipated for the 1999 tax year. However, on March 6, 2000 the Debtors filed an amended schedule B disclosing $3,999 in tax refunds. The Debtors' 1999 tax returns reflect an Idaho state tax refund of $180 and a federal refund of $3,819.

They also filed an amended schedule C to shield a large portion of their refunds from administration by the Trustee. A $1,600 exemption was claimed pursuant to Idaho Code § 11–605(10), and $1,500 of the refund was characterized as a "child tax credit" and claimed exempt pursuant to § 11–603(4).

■ The Trustee filed a timely objection to the amended claim of exemption for the child tax credit on March 21, 2000.[1] *See,* Fed.R.Bankr.P. 4003(b). A hearing on the Trustee's objection was held on May 15, 2000, after which the Court requested additional briefing and took the matter under advisement.

---

1. Because the Trustee's objection relates only to the "child tax credit" and no timely objection has been lodged to the $1,600 claimed exempt pursuant to § 11–605(10), this amount is deemed exempt. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The Court would note, however, that § 11–605(10) was amended effective April 12, 2000, to restrict the § 11–605(10) exemption solely to tangible personal property, thus eliminating the ability to claim such an exemption in anticipated tax refunds. The pre-amendment version of § 11–605(10) applies to this case, as it was filed prior to April 12.

Upon consideration of the record, the arguments of the parties and applicable authorities, the Court determines that the Trustee's objection shall be sustained.

## DISCUSSION

### a. Exemptions

 Section 522(b) allows a debtor to exempt property of the estate from administration by the trustee. *In re DeBoer*, 99.3 I.B.C.R. 101, 102 (Bankr.D.Idaho 1999). Since Idaho has opted-out of § 522's federal exemptions, *see* Idaho Code § 11–609, state law controls the validity of the claimed exemption, though this Court interprets and applies that law in bankruptcy proceedings. *DeBoer*, 99.3 I.B.C.R. at 102 citing *In re Collins*, 97.3 I.B.C.R. 78 (Bankr.D.Idaho 1997).

 Exemption statutes are liberally construed in favor of the debtor. *DeBoer*, 99.3 I.B.C.R. at 102; *In re Skaar*, 98.1 I.B.C.R. 13 (Bankr.D.Idaho 1998). Still, the statutory language of the exemption cannot be tortured in the guise of liberal construction. *DeBoer*, 99.3 I.B.C.R. at 102; *Collins*, 97.3 I.B.C.R. at 79. The Trustee, as the objecting party, has the burden of proving the exemption is not proper. Fed.R.Bankr.P. 4003(c).

Under Idaho law, a debtor is allowed an exemption for "benefits the individual is entitled to receive under federal, state, or local public assistance legislation[.]" Idaho Code § 11–603(4). This Court has previously determined that exemption of the "earned income credit" under § 11–603(4) is proper. *In re Jones*, 107 B.R. 751, 89 I.B.C.R. 288 (Bankr.D.Idaho 1989). *See also, In re Dennett*, 1995 WL 128474 (1995). The Debtors argue that the child tax credit can and should be similarly viewed as a form of "public assistance" and therefore be exempt under this provision.

### b. The credit

 The child tax credit was authorized by Congress in 1997 as part of the Taxpayer Relief Act of 1997. The credit is codified at 26 U.S.C. § 24. This provision allows taxpayers to claim a credit against tax liability in a taxable year of $500.00 for each qualifying child. 26 U.S.C. § 24(a). In order to take advantage of the credit each child must be claimed as a dependent, be under the age of 17 at the close of the taxable year, and bear the appropriate relationship to the taxpayer. 26 U.S.C. § 24(c)(1)(A)-(C). The Debtors thus claimed a $1,500 credit for their three minor children. The credit does not begin to phase out for joint taxpayers until their modified adjusted gross income exceeds $110,000. 26 U.S.C. § 24(b)(1) and (2)(A).[2]

### c. Disposition

 While the question of exemption of the child tax credit under § 11–603(4) is a matter of first impression, the Court has previously developed an approach to such issues. *See, In re Crampton*, 249 B.R. 215, 00.2 I.B.C.R. 83–84 (Bankr.D.Idaho 2000). *Crampton* rejected a similar attempt to bring a federal tax credit within the reach of § 11–603(4). In that case, the issue involved the "Hope credit." In rejecting the argument that this credit was a form of "public assistance" like the earned income credit found exempt in *Jones*, the Court essentially adopted a three-part inquiry: First, what is the purpose and policy of the tax credit, as enunciated by the courts or established by legislative history, and in particular is that policy one of "public assistance" as found in *Jones*. Second, what is the nature of the debtor/taxpayers access to the credit, i.e., is it a refundable credit. Third, when and at what income levels is the credit phased down and/or eliminated. 249 B.R. at 218, 00.2 I.B.C.R. at 84–85.

---

**2.** The methodology of calculating the credit phase—out depends on, among other things, the taxpayers' actual income. This makes it difficult to estimate the point above $110,000 when the credit would be fully eliminated.

## 1. Purpose and policy

 In order to evaluate the child tax credit, reference must first be made to the purpose and policy of the earned income credit found exempt in *Jones. Sorenson v. Secretary of the Treasury of the United States,* 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) states:

> The earned-income credit was enacted to reduce the disincentive to work caused by the imposition of Social Security taxes on earned income (welfare payments are not similarly taxed), to stimulate the economy by funneling funds to persons likely to spend the money immediately, and to provide relief for low-income families hurt by rising food and energy prices.

475 U.S. at 864, 106 S.Ct. 1600. *See also, In re Jones,* 107 B.R. at 751–52, 89 I.B.C.R. at 289, quoting *In re Searles,* 445 F.Supp. 749 (D.Conn.1978)("... the primary purpose was clearly to afford economic relief to low income heads of household who work for a living.")[3] and citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

*Crampton* found the Hope credit did not share that focus on assisting the poor:

> The Hope credit was designed to benefit a broad range of individuals and families incurring education expenses, including many earning substantial incomes. While undoubtedly the Hope credit will aid lower income individuals and families its purpose was not limited to assisting the working poor, as was the earned income credit.

249 B.R. at 218, 00.2 I.B.C.R. at 85.

 Similarly, there is no articulation in legislative history or case law that the main or primary purpose of the child tax credit was to assist or provide relief to low income families. To the contrary, the intent was to provide relief to a broad spectrum of taxpayers with families:

> The Committee believes that the individual income tax structure does not reduce tax liability by enough to reflect a family's reduced ability to pay taxes as family size increases. In part, this is because over the last 50 years the value of the dependent personal exemption has declined in real terms by over one-third. The Committee believes that a tax credit for families with dependent children will reduce the individual income tax burden of those families, will better recognize the financial responsibilities of raising dependent children, and will promote family values. In addition, the Committee believes that the credit is an appropriate vehicle to encourage taxpayers to save for their children's education.

H.R. Rep. 105–148, at 309–10 (1997); S. Rep. 105–33, at 42 (1997), U.S.Code Cong. & Admin.News 1997 at pp. 678, 704. Congressmen and Senators, in connection with the inclusion of this credit in the Taxpayer Relief Act of 1997, repeatedly voiced that the child tax credit was enacted to provide relief for hardworking middle-income families and to allow these families to invest their own money into their children's education, housing, nutrition, nurturing and care. *See,* 143 Cong. Rec. H4922–01 (daily ed. July 9, 1997) (statement of Rep. Kilpatrick); 143 Cong. Rec. E1281–02 (daily ed. July 20, 1997)(statement of Rep. Packard); 143 Cong. Rec. S6440–2, S6461 (daily ed. July 26, 1997)(statement of Sen. Gramm); 143 Cong. Rec. S6332–01, S6333 (daily ed. June 25, 1997)(statement of Sen. Roth).[4]

---

**3.** In common parlance, "public assistance" means "welfare." The earned income credit was held to be a functional equivalent of a welfare benefit in *Jones* though, as *Crampton* notes, not all courts agree with that characterization. 249 B.R. at 217, 00.2 I.B.C.R. at 84, n. 5.

**4.** While the flavor of the debate tends toward relief for middle income Americans, there are also statements reflecting benefit to poorer taxpayers. *See e.g., Statement By President William J. Clinton upon signing H.R.2014,* 1997 U.S.C.C.A.N. 1620–1 ("I have insisted that the group that can benefit from the child credit include working families with incomes

While the child tax credit may have been viewed by Congress as good and necessary social policy, it was designed so as to benefit a large percentage of Americans. This includes taxpayers with incomes up to $110,000 per year. It can hardly be said that it was designed or implemented as "public assistance" legislation in the sense of social welfare as discussed by the Court in *Jones* and *Crampton*.

Thus, just as with the Hope credit considered in *Crampton*, the Court here finds and concludes that the "child tax credit" was not adopted with a legislative purpose of public assistance within the contemplation or reach of § 11–603(4).

### 2. Claiming and using the credits

The child tax credit and the Hope credit are codified within *Nonrefundable Personal Credits*, Title 26, Chapter 1, Subchapter A, Part IV, Subpart A, U.S.Code. Debtors may use those credits to directly reduce tax liability. This may facilitate a refund where prior payments or withholdings are in an amount greater than the tax liability net of the credit. But these credits, unlike the earned income credit, are not themselves recoverable as a refund by taxpayers. Debtors have no claim to the amount of the credit other than in using it to reduce tax liability.

### 3. Economic limitations on the credit

*Crampton* noted that the earned income credit is phased out entirely for taxpayers with income over $30,850. Thus, it can only be claimed by those debtors occupying the lowest rungs on the economic ladder.

In contrast, the child tax credit benefits a broad range of taxpaying families, including those with low, middle, and even relatively high incomes. The child tax credit does not begin to phase out for taxpayers filing a joint return until their adjusted gross income reaches $110,000.

between $15,000 and $30,000.") But instead of proving the "public assistance" or "welfare" nature of the legislation, the Court sees

Certainly some debtors taking advantage of the child tax credit will have incomes at the low end of the continuum. But it is the public assistance nature of the benefit, and not the financial circumstances of the recipient, that drives the conclusion of whether § 11–603(4) applies. To hold otherwise would mean that all legislative benefits poorer debtors receive would be exempt simply because they were poor.

## CONCLUSION

The Debtors argue that this Court should honor the pro-family policy reflected by Congress' enactment of the child tax credit. But that policy was already recognized and effectuated when the Debtors were able to claim and use the credit in order to reduce their tax liability. The credit was not taken away. The more apt question is whether the Debtors, in addition to benefitting from using the credit to reduce taxes, are also able to use the existence of the credit to insulate part of their refund from a bankruptcy trustee under title 11. The Court, in order to respect the public policy of this tax credit, need not also torture the language of § 11–603(4).

*Jones* established that the earned income credit can be properly viewed as "public assistance legislation" as that term is used in the Idaho exemption statutes. But the different policy and purpose, mechanics of use and access, and availability to higher income taxpayers, of the child tax credit forces it outside § 11–603(4).

Accordingly, the Trustee's objection to exemption of the Debtors' refund to the extent of $1,500 will be sustained and the exemption will be disallowed.

this simply as further evidence of the breadth of the credit's scope.