**In re Charles OXFORD, Debtor.**

**No. 01–20746.**

United States Bankruptcy Court,
D. Idaho.

Feb. 21, 2002.

J. Ford Elsaesser, Sandpoint, ID, Chapter 7 Trustee.

Danny J. Radakovich, Lewiston, ID, for debtor.

## MEMORANDUM OF DECISION

TERRY MYERS, Bankruptcy Judge.

### BACKGROUND AND FACTS

Charles Oxford ("Debtor") filed a voluntary petition for chapter 7 relief on May 29, 2001. Debtor disclosed on his schedule B under item 9 (Interest in insurance policies), "Prudential Insurance account # 70854798" with a value of $7,861.00. On his schedule B under item 10 (Annuities), he listed "Prudential Plaza account # 32311388" valued at $3,739.00. Under item 11 (Interests in IRA, ERISA, Keogh, or pension plans), he listed a Potlatch Corporation retirement fund in an unknown amount and "Prudential Plaza account # D47195577" with a value of $3,657.00.

On schedule C, Debtor claimed each of the Prudential accounts as fully exempt under numerous provisions of the Idaho Code. His chapter 7 Trustee objected in a timely fashion to these exemptions. The matter came on for hearing on December 17, 2001.

No evidence was presented by either party at the time of hearing. However, the Trustee and Debtor stipulated that each of the described Prudential "accounts" represented unmatured life insurance policies.

Debtor acquired interests under them through payment of premiums prior to bankruptcy. He also continued making premium payments subsequent to the filing of the petition for relief. None of the three policies are credit life insurance contracts. The values which were scheduled by Debtor were not explained with specificity. The parties appeared at times to refer to them as the policies' cash surrender values and at other times as their loan values.[1] Whether or to what degree these values include accrued interest or dividends is also not clear.

The litigants did agree that these contractual interests were not annuities, pension rights or some other sort of property interest. Debtor therefore waived the exemptions he had asserted under Idaho Code §§ 55–1011, 41–1836(1)(b), and 11–604(a).

Debtor continues to assert, however, that the exemptions he claimed are proper under Idaho Code §§ 11–605(8) and (9), which provide:

**11–605. Exemptions of personal property subject to value limitations.—**

(8) Any unmatured life insurance contract owned by an individual, other than a credit life insurance contract.

---

1. Cash surrender value is the "amount of money payable when an insurance policy having cash value, such as a whole-life policy, is redeemed before maturity or death." Black's Law Dictionary (7th ed.1999), at 1549. The loan value of a policy is presumptively an amount which the insurer will lend the policy owner, secured by the policy or its benefits. Whether the loan values of the subject policies were equivalent to their cash surrender values (if any) was not made clear.

(9) An individual's aggregate interest, not to exceed five thousand dollars ($5,000) in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the individual under which the insured is the individual or a person of whom the individual is a dependent.

The litigants orally presented their respective interpretations of these Idaho Code provisions. At the close of argument, the matter was taken under advisement subject to simultaneous briefing by January 17. Debtor filed his brief. The Trustee did not.[2]

## DISCUSSION AND DISPOSITION

The basic approach to such exemption issues is well established:

Section 522(b) of the Bankruptcy Code allows a debtor to exempt property from the bankruptcy estate. As provided in Section 522(d), Idaho has "opted out" of the exemptions provided under the Bankruptcy Code, and instead limits residents to those exemptions authorized under state law. Idaho Code § 11–609. As the objecting party, Trustee has the burden of showing a claimed exemption as improper. Fed.R.Bankr.P. 4003(c); *In re Dever*, 250 B.R. 701, 704, 00.3 I.B.C.R. 149, 150 (Bankr.D.Idaho 2000). Moreover, exemption statutes are liberally construed in favor of the debtor. *Id.*

*In re Steinmetz*, 261 B.R. 32, 33, 01.1 I.B.C.R. 28 (Bankr.D.Idaho 2001).

It appears that the two subject provisions of the Idaho Code have never received judicial interpretation by this Court or by the state appellate courts. Neither of the litigants has advised the Court of the existence of any such decision, reported or otherwise. Nor have they identified any pertinent legislative history, commentary or treatise interpretation, or judicial construction of similar statutes by other courts. Rather, they advance their own "take" on the statute and discuss how they think it should be applied.

These two provisions of the Idaho Code were enacted July 1, 1999. *See* 1999 Sess. Laws, ch. 307, § 1, p. 764. There is, indeed, no legislative history.

However, the Court observes that these two sections are in almost all pertinent respects identical to the federal exemptions found in § 522(d)(7) and § 522(d)(8).[3] Those sections provide:

(d) The following property may be exempted under subsection (b)(1) of this section:

. . .

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed $9,300 less any amount of property of the estate transferred in the manner specified in section 542(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the

---

**2.** A failure to file briefing could be viewed as an abandonment of contentions advanced. *See Lawrence v. Lawrence (In re Lawrence)*, 237 B.R. 61 (Bankr.D.N.J.1999), at 85, n. 3 and cases cited therein. Even if not so viewed, the Trustee's failure to provide authority is a risky approach given the burden imposed by Rule 4003(c). The Court, however, elects under all the circumstances to treat the Trustee's failure to brief the issues related to his objection not as an abandonment of

that objection but instead as an indication he is content to rely solely upon his oral arguments at hearing.

**3.** The similarity between the state and federal exemptions was not raised or addressed by the parties. The Court has not had, therefore, the benefit of their research or analysis of the authorities related to §§ 522(d)(7) or (d)(8).

debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

The Idaho Legislature changed the term "the debtor" to "an individual" but § 11–605(8) is otherwise identical to § 522(d)(7). The Legislature made the same change in vernacular in § 11–605(9), and it also modified to $5,000 the amount of the "loan value" exemption, which under § 522(d)(8) was $8,625 when § 11–605(9) was enacted.[4] The portion of § 522(d)(8) which deals with automatic premium payments and § 542(d) was omitted.

Despite these changes, the basic grant under federal law of an exemption for unmatured life insurance contracts and for a portion of their loan value was adopted in Idaho. Therefore, even though Idaho was a state which had opted out of § 522(d), the Court is justified in using judicial and other interpretation of the corollary federal exemptions, at least in the absence of any conflicting state legislative history or state decisional law. *See, e.g., Flatau v. Waggoner (In re Waggoner)*, 244 B.R. 492, 493 (Bankr.M.D.Ga.2000).

### A. Section 11–605(8)

■ In *Waggoner*, the court considered a Georgia statute which was identical to

§ 522(d)(7), analogous to the situation presented here.[5] That court referred to the legislative history of the federal exemption, which provided:

> [11 U.S.C. § 522(d)(7)] exempts a life insurance contract, other than a credit life insurance contract, owned by the debtor. This paragraph refers to the life insurance contract itself. It does not encompass any other rights under the contract, such as the right to borrow out the loan value. Because of this provision, the trustee may not surrender a life insurance contract, which remains property of the debtor if he chooses the Federal exemptions.

*Id.* at 493, citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 361, U.S.Code Cong. & Admin.News 1978, p. 5787, 6317. The leading bankruptcy treatise echoes this view. *Id.; see also,* 4 Collier on Bankruptcy, at ¶ 522.09[7], p. 522–58. *Waggoner* then concluded:

> The Court is persuaded that Georgia Code section 44–13–100(a)(8) allows a debtor to exempt the unmatured life insurance policy itself. This does not permit the debtor to exempt the cash value[6] of the life insurance policy. *See Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 618

---

4. The exemption amount in § 522(d)(8) was $4,000 when the Code was first enacted, and was raised to $8,000 in 1994. The amount became subject to 3–year adjustments under § 104(b) starting in 1998. From April 1, 1998 through April 1, 2001, it was $8,625 and it is currently $9,300. *See* § 104(b)(1); *see also* 4 L. King, Collier on Bankruptcy, ¶ 522.09[8], at 522–59, n. 64 (15th ed. rev.2001).

5. *Compare* O.C.G.A. § 44–13–100(a)(8) (Supp. 1999), as quoted at 244 B.R. at 493, *with* § 522(d)(7), *and with* Idaho Code § 11–605(8).

6. This Court must assume that *Waggoner's* use of the term "cash value" in this passage refers to the loan value of the policy, and not "cash surrender value." If the trustee is unable to force surrender of the policy once the debtor has exempted the policy itself under § 522(d)(7) or its state law counterpart, something *Waggoner* and the legislative history seem to acknowledge, then the trustee will be unable to obtain the cash surrender value. But to the extent that a policy has accrued interest or dividends or loan value, as a component of or in addition to cash surrender value, a separate question is raised and must

(9th Cir.1988).[7]

*Id.* at 493–94.

The Court agrees with and adopts this approach, and it finds and concludes that the policies themselves are properly exempted. To the extent that the Trustee has objected to the Debtor's exemption of the three Prudential insurance contracts under Idaho Code § 11–605(8), that objection will be overruled.

### B. Section 11–605(9)

■ The legislative history quoted above makes clear that exemption of a policy "does not encompass any other rights ... such as the right to borrow out the loan value." That question is left to § 11–605(9), which provides an exemption of an "individual's aggregate interest, not to exceed ... $5,000 ... in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the individual."[8]

As noted above, the litigants have at times characterized the scheduled values

as the available loan values under the three Prudential contracts.[9] The question presented is how much of those values may properly be exempted.

Debtor argues that in order to meet the purpose of the statute and afford it "liberal" construction, the exemption provided in § 11–605(9) should be interpreted to protect such value up to $5,000 per policy. The Trustee argues that the use of the term "aggregate" reflects that Debtor should be limited to a total of $5,000 regardless of the number of policies involved.

In *Brown v. Swartz (In re Swartz)*, 18 B.R. 454 (Bankr.D.Mass.1982), the court considered the value limitation under § 522(d)(8), which was at that time $4,000. The debtor had eight life insurance contracts, and had borrowed over $17,000 against their loan values. The debtor's trustee argued that only a single $4,000 exemption was available. As here, the debtor argued that the exemption amount should be applied on a per contract basis.

---

be analyzed under § 522(d)(8) and, in Idaho, § 11–605(9).

7. *Woodson* considered a situation where a debtor was the owner and beneficiary of a life insurance policy on his wife. Three days after he filed chapter 11, his wife died, which resulted in payment of death benefits exceeding $1,000,000. The debtor thereafter claimed the policy exempt as of filing under a California statute which operated much like § 522(d)(7), and further argued that the exemption of the policy removed the proceeds of the policy from the reach of creditors in bankruptcy. The Court disagreed, drawing a distinction between the right to exempt and continue the policy in effect, and treatment of the proceeds payable by virtue of its continued existence. *Id.* at 617–18. The issues involved the interplay of § 522(d)(7) and § 541(a)(5)(C) more than they did the type of question posed in the instant case. *Woodson* did, however, note that both federal and California law limited the extent to which loan value could be exempted. *Id.* at 618–19.

8. That Debtor is the "individual" who owns the three policies appears clear. Section 11–605(9) also requires that the insured under the policy be either the owner or "a person of whom [he] is a dependent." The identity of the insured(s) under the Prudential policies was not discussed. The Court assumes for the purpose of this decision that the policies meet this requirement.

9. Debtor argues in his post-hearing brief that the value of the policies might be the result of something other than accrued dividends or interest, such as return on portions of the premiums invested by the insurer under universal life policies. *See* Doc. No. 13, at p. 3. However, neither party saw fit to provide factual detail as to the nature of the policies, the components of the agreed values, or the like. If there are factual issues which relate to the parties' ability to apply the instant decision to the dividends, interest and loan values of the subject policies, an evidentiary hearing can be requested.

*Id.* at 454–55. The court rejected the debtor's proposed construction, stating:

[The] Legislative history pertinent to this section [522(d)(8)] states in part that the federal exemption: "permits the debtor to exempt up to $5,000 [10] in loan value in a life insurance policy owned by the debtor under which the debtor or an individual of whom the debtor is a dependent is the insured." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 361, U.S.Code Cong. & Admin.News 1978, p. 5787, 6317.

The Committee further states: "a trustee is authorized to collect the entire loan value on every life insurance policy owned by the debtor as property of the estate. First however, the debtor will choose which policy or policies under which the loan value will be exempted." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 361, U.S.Code Cong. & Admin.News 1978, p. 6317.

It is apparent from this language that congress intended the debtor to have a singular choice as to the policy or policies in which he wished to exercise his exemption. This court finds that the Code, as enacted, provides for this exemption to be applied once and not as a separate exemption available for application against each and every policy.

*Id.* at 455.

The court also rejected the debtor's approach on the basis that it would be subject to potential abuse. *Id.* at 456 (debtor could purchase several contracts, protecting up to $4,000 of value in each, and "with little effort and no trouble insulate his cash from his creditors").

*Swartz* noted that, under the Bankruptcy Act, a debtor could retain a life insurance policy and its benefits, but only if he paid the trustee the accrued cash value. *Id.* at 455–56, discussing Act § 70(a)(5).[11] According to *Swartz*, the Code took this exemption "one step further" under § 522(d)(8) "and entitle[s] the debtor to an exemption of up to $4,000.00 while enabling him to keep the policy intact without paying over its cash surrender value." *Id.* at 456.

This Court concludes, consistent with *Swartz*, that the exemption cap does not apply on a per contract basis but, rather, is applied to all qualifying unmatured life insurance contracts as a group. As Congress indicated in regard to § 522(d)(8), the trustee is "authorized to collect the entire loan value on *every* life insurance policy owned by the debtor" but "[f]irst ... the debtor will choose which policy *or policies* under which the loan value will be exempted." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) at 361, U.S.Code Cong. & Admin.News 1978, p. 6317 (emphasis supplied).[12]

Here, Debtor's Prudential policies collectively provide a total value of $15,257. Idaho's version of the exemption as contained in I.C. § 11–605(9) provides protec-

---

**10.** H.R. 8200 as passed by the House, and as discussed here in H.R.Rep. No. 95–595, had a higher exemption amount than what was ultimately enacted in the Bankruptcy Reform Act of 1978.

**11.** *Accord, Michelman v. Acacia Mutual Life Insurance Company (In re Brostoff),* 611 F.2d 733, 737 (9th Cir.1979).

**12.** Debtor should know that it could be worse. *In re Guyot,* 240 B.R. 326 (Bankr.D.Minn.

1999) considered a state statute reading much like § 522(d)(8) and Idaho Code § 11–605(9), and decided that it provided for an exemption of only a *single* life insurance policy and that "aggregate" value referred only to the various values or interests within that one policy. *Id.* at 327–28. This Court declines to follow *Guyot*, which reached its construction of this exemption, at least in part, due to the language of other Minnesota statutes.

tion for an aggregate maximum of $5,000.00. Debtor would therefore be required to provide the difference of $10,257.00 to the Trustee.

 Debtor argues that a construction of § 11–605(9) in this fashion vitiates the exemption provided in § 11–605(8), because the policy exempt under subsection (8) might need to be surrendered (or at least borrowed against) in order to satisfy the Trustee's right to the non-exempt portion of the loan value under subsection (9). However, Debtor provides no authority indicating the estate's rights to the non-exempt loan value under § 522(d)(8) should be limited by reason of § 522(d)(7), and the Court has not found such authority.[13] While there may be an impact on a debtor's contract rights by reason of the monetary cap of § 11–605(9), the balance was struck by the legislative branch, and this Court is not persuaded that it should be judicially disregarded.[14]

Therefore, the Trustee's objection to the exemption claimed under Idaho Code § 11–605(9) will be sustained as to any accrued dividend or interest under, or loan value of, Debtor's three insurance contracts in excess of $5,000.

## CONCLUSION

For the foregoing reasons and on the stipulated record, the Court concludes that any objection of the Trustee to the § 11–605(8) exemption claimed by Debtor in the three Prudential contracts will be overruled and the exemption allowed. The Court further concludes that the Trustee's

objection to Debtor's exemption under § 11–605(9) will be sustained to the extent that it contests exemption of accrued dividends or interest under, or loan value of, such policies in excess of $5,000 in the aggregate, but such objection will otherwise be overruled. The exemption will be allowed to the extent of a total of $5,000 in such value.

The Trustee shall provide an Order consistent herewith.

---

13. The courts instead appear to apply § 522(d)(8) as written, notwithstanding an arguable tension with or impact upon § 522(d)(7). *Woodson*, for example, acknowledged the ability to exempt the policy, but noted that separate issues existed regarding rights in the proceeds, *id.* at 617–18, and how much of the loan value of the policy could be protected, *id.* at 618–19 and at n. 13.

14. A construction of a statute that renders another portion of the statute a nullity should be avoided. *Hoskins v. Howard*, 132 Idaho 311, 971. P.2d 1135, 1139 (1998). The fact that §§ 11–605(8) and (9) were simultaneously enacted by the Idaho Legislature supports application of this cautionary rule.