**BRUCE DAMEWORTH and FE`OFA`AKI DAMEWORTH,**
**Plaintiffs,**

**v.**

**AMERICAN SAMOA GOVERNMENT, Defendant.**

High Court of American Samoa
Trial Division

CA No. 24-02

October 3, 2002

Before RICHMOND Associate Justice, SAGAPOLUTELE, Associate Judge, and MAMEA, Associate Judge.

Counsel: For Plaintiffs, Daniel R. King
For Defendant, Benton H. Walton IV, Asst. Attorney General

## ORDER GRANTING PLAINTIFFS AND DENYING DEFENDANT SUMMARY JUDGMENT

Plaintiffs Bruce Dameworth and Fe`ofa`aki Dameworth ("the Dameworths") filed a complaint for an additional refund of income taxes for the year 2000 in the amount of $2,429.00. Defendant American Samoa Government ("ASG") answered, denying any additional refund liability. First, the Dameworths, and then, ASG moved for summary judgment. The Court heard these motions of July 12, 2002. Counsel for both parties were present.

### Discussion

A. Summary Judgment Standard of Review

Summary judgment is appropriate when there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law. T.C.R.C.P. 56(c). If the moving party makes a prima facie case that would entitle the movant to a directed verdict if uncontroverted at trial, the burden shifts to the adverse party, who must set forth specific facts showing that there is a genuine issue for trial." T.C.R.C.P. 56(e). The court must view the pleadings and supporting

papers in the light most favorable to the non-moving party. *Amerika Samoa Bank v. United Parcel Serv.*, 25 A.S.R.2d 159, 161 (Trial Div. 1994); *Ah Mai v. Am. Samoa Gov't (Mem.)*, 11 AS.R.2d 133, 136 (Trial Div. 1989).

## B. Undisputed Facts

The Dameworths timely filed a joint American Samoa income tax return, Form 390, for the tax year 2000. They reported a tax liability of $7,384.00 and credits of $10,307.00, which resulted in an overpayment of $2,923.00. The stated tax credits consisted of $8,307.00 of income tax withheld from wages and $2,000.00 as the child tax credit ($500.00 for each of four qualifying children). The Dameworths also timely filed an amended tax return, Form 390X, for the tax year 2000 to report reduced wages and an additional overpayment of $379.00, which decreased their actual tax liability to $7,005.00. The two added overpayments are $3,302.00. ASG paid the Dameworths a refund of $873.00 for tax year 2000 after deducting a $50.00 penalty for not supplying a tax identification number for a dependent listed on their 1999 income tax return. The Dameworths accepted the penalty assessment. Thus, the stated net overpayment amount still outstanding is $3,302.00 less $923.00, or $2,379.00.

ASG does not contest the Dameworths' calculations. However, it disputes the applicability of the child tax credit in American Samoa. On March 21, 2000, the Governor of American Samoa ordered the Treasurer of American Samoa to cease recognition and payment of any child tax credit claims. Then, on August 5, 2001, the Governor confirmed the earlier directive and ordered the Treasurer to pay the additional child tax credit only to the extent federal funds are received to pay the credit. In both directives, he cited the lack of locally appropriated funds as the reason for the directive. The Legislature of American Samoa has not appropriated funds for the payment of refunds for the basic child tax credit.

## C. Legal Basis of the Child Tax Credit

■ American Samoa has adopted the income tax laws and rules of the United States through A.S.C.A. § 11.0403(a), which reads:

(a) The income tax and the income tax rules in force in the United States of America and those which may hereafter be enacted or adopted, where not clearly inapplicable or incompatible with the intent of this section, are adopted by American Samoa, and shall be deemed to impose a separate territorial income tax, payable to the government. These laws include, but are not limited to, the

government. These laws include, but are not limited to, the following provisions of the United States internal Revenue Code of 1986; subtitle A; chapters 24 and 25 of subtitle C, with reference to the collection of income tax at sources on wages; and all provisions of subtitle P which apply to the income tax, including provisions as to crimes, other offenses and forfeitures contained in chapter 75.[1]

■ The provisions of A.S.C.A. chs. 11.04 and 11.05 and of the United States Internal Revenue Code ("IRC") adopted by § 11.0403(a) constitute the Samoan Income Tax Act ("SITA"). A.S.C.A. § 11.0403(b).

At issue is the child tax credit in the IRC, 26 U.S.C.A. § 24 ("SITA § 24"). The statute in part reads:

### § 24. Child tax credit

**(a) Allowance of credit**--There shall be allowed as a credit against the tax imposed by this chapter for the taxable year with respect to each qualifying child of the taxpayer an amount equal to $500 . . . .

Subtitle A of the IRC includes 26 U.S.C.A. § 24, and the child tax credit is therefore at face value a provision of the American Samoa income tax laws as SITA § 24.

ASG argues that the exception in A.S.C.A. § 11.0403(a) "where not clearly inapplicable or incompatible with the intent of this section" comes into play in this regard. The exception provides an ultimate safety valve, as ASG argues, to ensure that provisions contrary to the territory's public interest are not enacted into law. ASG then attempts to illustrate a basis for finding an implicit legislative intent to disallow the credit

We disagree with ASG. The Legislature has not, as is discussed further below, enabled the Governor to enact laws, specifically for purposes of

---

[1] The original reference in A.S.C.A. § 11.0403(a) was to the United States Internal Revenue Code of 1954. In 1988, the reference was changed to the Internal Revenue Code of 1985. P.L. No. 20-51. In 2001, the Legislature froze the automatic adoption of congressional changes in the Internal Revenue Code to those in effect on December 31, 2000. P.L. No. 27-15. In other words, any subsequent congressional changes do not become law in American Samoa unless the Legislature sees fit to first enact them as positive territorial law. The basic child tax credit was the law of American Samoa prior to P.L. No. 27-15, and the freeze of this legislation did not impact the application of the credit in the territory.

this action to repeal income tax laws, without legislative approval. Though not needed at all, as is also discussed further below, the lack of legislated appropriations for child tax credit refunds does not equate with any legislative intent to disallow the credit.

■ The Governor's several proposals to remove the child tax credit from the SITA and the Legislature's several rejections of the proposals, which we judicially notice as a matter of common knowledge, demonstrate just the opposite. Contrary to ASG's reasoning, the Legislature has evidenced clear intent to recognize the child tax credit as the law of American Samoa. Moreover, ASG fails to articulate, let alone prove, any specific public interest rendering the basic child tax credit clearly inapplicable or incompatible with the intent of AS.C.A. § 11.0403.

We hold that the child tax credit is not clearly inapplicable or incompatible with the intent of A.S.C.A, § 11.0403(a), and therefore, the credit is the law of American Samoa.

D. Governor's Non-Payment Directive

ASG contends that even if the basic child tax credit is the law in American Samoa, the Governor's directive prohibiting any payment of the child tax credit was still a lawful exercise of the Governor's authority as ASG's chief executive.

ASG characterizes the Governor's action as comparable with the Treasurer's regulatory authority under the SITA. It rationalizes that the Governor, as the Treasurer's superior, may fill the Treasurer's role, denoted in AS.C.A. § 11.0401,[2] in administering American Samoa's income tax laws. As examples, ASG cites SITA § 481, 42, and 1502, which make reference to the Treasurer's authority to prescribe regulations that further the implementation of the tax laws. It also notes the Governor's constitutional authority to issue executive regulations not in conflict with laws of the United States applicable to American Samoa, laws of American Samoa, or with [the] Constitution." AM. SAMOA REV. CONST., art. IV, § 6.[3] All of the cited statutory and constitutional

---

[2] ASG equates the phrase "except where it is clearly otherwise required" in A.S..C.A. § 11.0401 as somehow granting the Executive Branch legislative authority to limit the application of the IRC provisions on American Samoa taxpayers. The statute only pertains to sensible substitution of terms for purposes of the SITA. It has nothing to do with any regulatory power, whether legislative or administrative in nature.

[3] ASG's comment on this constitutional power is a gross *non sequitur*. The lack of appropriated funds to pay the basic child tax credit refunds simply does not remove the bald-faced conflict of the Governor's

regulatory authority relate to the power to provide administrative guidance to carry out, not effectively annul as does the Governor's directive of non-payment of the child tax credit, the income tax or for that matter any other laws.[4]

 The underlying principle in point is the time-honored doctrine of the separation of executive and legislative powers for sound government—a legislature makes the laws, and the executive branch undertakes the public role in the execution of those *laws*. *See The Senate v. Lutali*, 27 A.S.R.2d 126, 135 (Trial Div. 1995) (hereinafter *Lutali I*). Neither the Governor nor any other member of ASG's Executive Branch may undo what the Legislature of American Samoa has put in place as law without having a statutory basis for such action. The Legislature has enacted the child tax credit as the law of American Samoa and only the Legislature may remove the credit from the SITA.

Therefore, we hold that as a matter of law the Governor's directive to not pay the child tax credit abrogated neither the credit in American Samoa law, nor its benefit to the taxpayers of the territory.

E. Non-Appropriation of Funds

ASG next asserts that even if basic child tax credit is the law in American Samoa, and the Governor did not have authority to direct non-payment of credit refunds, the lack of appropriated funding to pay credit refunds, the reason for the Governor's action cited in the two directives, legally justified non-payment of the refund to the Dameworths.

This argument first focuses on the anti-deficiency statute, A.S.CA. § 10.0601. This statute prohibits any ASG officer or employee from making or authorizing expenditures or obligations in excess of the amount of appropriated funds available for the purpose of the expenditure, or from expending before appropriations are made for the purpose of the expenditure unless authorized by law. *See id.* The argument proceeds with recognition of the constitutional prohibition on legislative appropriations in excess of available revenues. AM. SAMOA REV. CONST. art. II, § 1(c). It concludes with the assertion that tax

---

directive with the existence of the credit as statutory law.

[4] We point out, as further examples, that the *Legislature* has given the Governor statutory authority to legislate, in effect, by imposing import excise taxes, A.S.C.A § 11.1003, or by suspending the operation of laws and administrative regulations to cope with an existing or imminent natural disaster, A.S.C.A. § 26.0105, as short-term emergency measures (emphasis added). We stress that this gubernatorial authority is statutorily based.

refunds are outlays of funds for which legislative appropriations are essential and have not been made.

ASG's argument is abstractly valid. *See Lutali I*, 27 A.SR.2d at 133-35. Normally, the Executive Branch develops an annual budget, assessing projected revenues and anticipated expenditures, and the Legislature approves the final budget, enacting the necessary appropriations. *Id.* at 135-137. The Legislature did not appropriate funds for payment of basic child tax credit refunds during the fiscal year in which the Dameworths' claimed refund would become payable (fiscal year 2001 from October 1, 2000, to September 30, 2001). It actually appears that no consideration was even made of past experience with the funding requirements for child tax credit refunds when the Executive Branch prepared the annual budget, or when the Legislature acted upon the Executive Branch's annual budget submission. If anything, the Executive Branch can be faulted for the miscalculated shortfall of funds earmarked, within or without the annual budget, for payment of the credit.

 However, tax credit refunds need not be expressly funded by appropriations. "ASG does not have, and cannot obtain, any ownership interest in monies representing tax refunds." *See The Senate* v. *Lutali,* 27 A.S.R.2d 157, 159 (Trial Div. 1995) (hereinafter *Lutali II*). "ASG holds these monies with a fiduciary duty to account for and refund those monies to the taxpayers as the rightful owner, with interest if not timely paid." *Id.* If the Legislature has neither authority to appropriate these private funds [owed as refunds] nor any legal role in the payment of the refunds." *Id*

In short, we hold that as a matter of law, the absence of appropriated funds for the payment of the basic child tax credit refunds does not, and cannot, excuse ASG from its fiduciary obligation to pay the credit refunds.

F. Impracticality and Futility of Ordering Compliance

Finally, ASG argues that ordering compliance with the child tax credit provision would be an impractical and futile act.[5]

---

[5] The "impractical and futile" terminology comes from ASG's cited case, *Golden v. Virgin Islands Gov't*, CA No. 2001-0162 (V.I. Dist. Ct. Nov. 30, 2001) (order granting plaintiffs declaratory relief and granting defendants summary judgment). *Golden* is an unpublished case, and ASG has been unable to provide the complete document containing the order or other information about the case. It appears that the *Golden* court declared that U.S. taxpayers in the United States Virgin Islands were entitled to refunds from the Virgin Islands Government related to an

ASG again refers to the appropriations process to underpin the claimed impractical and futile nature of the relief requested by the Dameworths. First, ASG points out that unless obligated by the end of the applicable fiscal year, in this case September 30, 2001, any funds appropriated by the Legislature to pay refunds for the child tax credit would have lapsed at the end of that year and would no longer be available to ASG to expend in payment of the credit. *See Lutali I*, 27 A.S.R.2d at 131-33. ASG then returns to the actual lack of appropriated funds for basic child tax credit refund purposes for the tax year 2000 during fiscal year 2001 (October 1, 2000, to September 30, 2001). Hence, for both reasons, ASG argues that a court order requiring ASG to pay the child tax credit to the Dameworths would be an impractical and futile act.

■ ASG ignores once again the fact that tax refund monies ware never its property, and it holds the funds merely in a fiduciary capacity for the taxpayers. *Lutali II*, 27 A.S.R.2d at 159. As a fiduciary, ASG owed a duty to make sure this money was returned to those to whom it was owed. *Id.* Appropriations to pay tax refunds are unnecessary. *Id.* Thus, the appropriation process is irrelevant to the issue in this action.

It is not an equitable solution to find that as a result of ASG's own breach of its fiduciary duty, ASG is now excused from making restitution as a matter of impracticality and futility. Such a holding would open up a slippery slope where ASG could conceivably refuse to pay any income tax refunds, and if it battled long enough in or out of court until payment was impracticable, it would be entitled to keep all the unpaid funds. The court has no role to instruct ASG on how to meet its responsibilities, rather it is to advise ASG as to what the law requires. In this instance, the law requires ASG to honor the child tax credit.

Generally speaking, tax credits fall into two categories: nonrefundable and refundable credits. *See* SITA § 21-26, 31-35. Nonrefundable tax credits "can only be used to offset tax that would otherwise be owed." *Sorenson v Sec'y of Treasury*, 475 U.S. 851, 854 (1986); *see also In re*

---

Tax Relief Act of 2001, Pub. L. 107-16, but then awarded the government summary judgment, holding that it would be "impractical and futile" to grant the "equitable relief" sought by the plaintiffs when the government could not issue refund checks before a mandated deadline. The *Golden* decision is not very helpful in our case without having detailed information on the facts and issues, before the Virgin Islands court. Moreover, the District Court order has been vacated and the case remanded to that court for further proceedings on the plaintiffs' standing. *Golden v. Virgin Islands Gov't*, No. 02-1068, slip op. (3d Cir. July 19, 2002).

*Dever*, 250 B.R. 701, 706 (2000). On the other hand, "if an individual's [refundable tax credits] exceeds his tax liability, the excess amount is considered an overpayment of tax under [SITA] § 6401(b)." *Sorenson*, 475 U.S. at 854. "Subject to specified setoffs, [SITA] § 6402(a) directs the [Treasurer of America Samoa] to credit or refund 'any overpayment' to the person who made it." *Id.*

■ The child tax credit, SITA § 24, is codified within subtitle A of the IRC, and hence within that part of the SITA, that lists nonrefundable tax credits. A taxpayer having one or two children and claiming the credit is only able to offset income tax liability, in excess of the mandated alternative minimum tax for all American Samoa taxpayers (2 of adjusted gross income in tax year 2000), A.S.C.A. § 11.0503, but not recover any refund for the amount of the credit over the amount of tax liability. *See In re Steinmetz*, 261 B.R. 32, 33-34 (2001).

■ However, SITA § 24(d) provides, with certain limitations, that "if a taxpayer's family has three or more children, a portion of the child tax credit is treated as refundable credit." *In re Steinmetz*, 261 B.R. at 34. The Dameworths have four qualifying children, making them eligible for a refund under this additional child tax credit provision. Aside from ASG's fruitless claim that it need not comply with the child tax credit provision at all, it does not dispute the Dameworths' eligibility for the additional credit of $2,000.00 ($500.00 for each child) as the amount of the Dameworths' credit entitlement.

■ The Dameworths are therefore entitled to recover by way of summary judgment $2,379.00 from ASG. They are also entitled to, in accordance with SITA §§ 6611 and 6621, interest on the outstanding principal amount and to, in accordance with SITA § 7430, reasonable court costs, which we find to be the ordinary local costs of suit, and reasonable attorney's Fees not to exceed $125.00 per hour. ASG is not entitled to a summary judgment against the Dameworths.

### Order

1. The Court grants summary judgment to the Dameworths against ASG, and denies summary judgment to ASG against the Dameworths. ASG shall pay the judgment to the Dameworths in the amount of $2,379.00, plus interest on the unpaid balance in accordance with SITA § 6611, 6621, and ordinary local costs of suit and reasonable attorney's fees, not to exceed $125.00 per hour, in accordance with SITA § 7430.

2. It the Dameworths seek the court's adjudication of the amounts of the interest, ordinary court costs, or reasonable attorney's fees owed to them by ASG, they may file with the Court and serve on ASG one or more

affidavits of their counsel or other suitable person(s) setting forth the amounts claimed.

If ASG contests the amounts, the Court will conduct an evidentiary or other appropriate hearing and determine the issues.

It is so ordered.